(128 So. 474)

## CONOVER v. LOUISIANA STATE RICE MILLING CO., Inc.

No. 29629.

March 31, 1930.

Rehearing Denied May 5, 1930.

McCoy, Moss & King, of Lake Charles, for appellant.

Modisette & Adams, of Jennings, for appellee.

O'NIELL, C. J.

This is a suit for a commission on the purchase of 95,474 sacks, being 115,254.75 barrels, of rough rice, alleged to have been bought by the plaintiff as agent for the defendant, under a contract for a commission of 7 cents per barrel of rice. Plaintiff, therefore, sued for $8,067.83, less $2,000 which is said to have been paid on account. The defendant, answering the suit, admitted having paid $2,-000, as an advance on the amount of commissions to be paid, and admitted owing a balance of $3,200.57, which defendant tendered, with $40.90 accrued interest and $4.79 court costs incurred at the time of the tender. On motion of the plaintiff, the court gave judgment on the pleadings for the amount tendered, leaving the claim for $2,867.26 in dispute. After hearing the evidence the court rejected the plaintiff's demand for the $2,867.-26, and he has appealed from the decision.

The defense to the suit is that the rice, as to which the commission is in dispute, was not bought by the plaintiff, but was bought by other buyers for the defendant. All of the rice bought by or for the defendant was held by the farmers in southwest Louisiana in a so-called pool, or agreement on the part of the farmers to hold out for a higher price than the rice mills were then willing to pay for rough rice. This suit is founded upon a contract, in the form of a letter written by the president of the defendant company and accepted by the plaintiff, by which the defendant agreed to pay plaintiff a commission of 7 cents per barrel for all rice bought by him from the pool for the defendant, under defendant's instructions. The president of the defendant company was extremely careful to stipulate, and to emphasize by repeating, in his letter, that no commission would be paid except on sales actually made "and consummated and completely closed," by the plaintiff, viz.:

"It is understood that, where any rough rice is sold at private sale, that is, where we have to go into any bidding along with buyers of other mills, no commission will be paid to you. It is our understanding that we will pay you only for 'such work as you actually do; that is to say, where you bring us together with the manager of the pool, and where the deal is consummated by you personally for our account. There will be no commission due to you on any purchases of rough rice by our buyers from the various agents of the pool, or from the farmers or other owners. I am making this explicit, for the reason that the impression seems to prevail that rough rices in different sections are to be sold by the various agents, or offers are to be secured by them and submitted to their headquarters for approval. I am sure that you will prefer that our understanding in this respect be made perfectly clear, and I believe that if we can get together on prices you will be able to handle quite a lot of deals for us direct with the pool, and you can rest assured that at all

times you will have our most hearty co-operation.

"It is distinctly understood that commissions in accordance with the foregoing are to be paid to you only in such cases where the purchase for our account has been consummated and completely closed by you, with our assistance and in accordance with our instructions."

About a month after this contract was made, a competing rice mill bought 40,000 sacks of rice from the pool, at the pool price, and, on the next day, another mill bought 150,-000 sacks at the pool price, and another mill bought 30,000 sacks and another 40,000 sacks —leaving unsold only approximately 100,000 sacks of rice in the pool, or in that territory. The plaintiff learned of these transactions on a Sunday morning and immediately telephoned the information to one Holbrook, head buyer for the defendant company, and, on his suggestion, telephoned the information to Frenk A. Godchaux, president of the company, who was en route to San Antonio, Tex., and had stopped off at Houston. Mr. Godchaux then instructed plaintiff to buy at the pool price 100,000 barrels (or perhaps he said sacks) of rice, on the main line of the Southern Pacific Railroad, between Lake Charles and Crowley, or at Elton or Lake Arthur, but not to buy any rice that would have to be shipped by boat, which would require two freight rates. Immediately after receiving these telephone instructions plaintiff called upon H. G. Chalkley, chairman of the pool committee, and proposed to buy for defendant 100,000 sacks of rice at the pool price; and Mr. Chalkley replied that defendant could have the rice at the pool price, provided that quantity remained unsold. Plaintiff then no-

tified Holbrook of the transaction; and, three days later, plaintiff and Holbrook called at Chalkley's office in Lake Charles, and selected and bought for defendant several lots of rice, amounting to 74,947 barrels, on all of which purchases defendant has now paid plaintiff the commission of 7 cents per barrel.

Thereafter, Holbrook bought for the defendant several lots of rice which were in the pool and for which the plaintiff is claiming the commission now in dispute. The greater part of the rice so bought had to be shipped by boat, required two freight charges, and was therefore such as the plaintiff was not authorized to buy for the defendant. Other lots of the rice bought by Holbrook for the defendant were of low grade, and were bought at a price less than the so-called pool price. The main reason, however, why the plaintiff is not entitled to a commission on the lots of rice bought by Holbrook for the defendant is that plaintiff did not consummate, or even make, these transactions, and, in fact, had nothing whatever to do with them. The commission is claimed on the ground, solely, of the transaction between plaintiff and Chalkley, on the Sunday morning, when Chalkley agreed that defendant might have 100,000 barrels of rice at the pool price, provided that quantity of rice remained unsold. We concur in the opinion of the district judge that the contract was plain enough in its stipulation, particularly in the last paragraph, that the commission was to be paid only on purchases "consummated and completely closed" by plaintiff. The very purpose of the stipulation, which was emphasized repeatedly in the contract, was, manifestly, to avoid such a dispute as gave rise to this suit.

The judgment is affirmed.